| |
|---|
| **Cordero v New York City Tr. Auth.** |
| 2024 NY Slip Op 33914(U) |
| November 1, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 155659/2019 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. RICHARD TSAI**                    PART                    21
                                                        *Justice*

------------------------------------------------------------------------------X

ROSEMARIE CORDERO,                           INDEX NO.            155659/2019
                         Plaintiff,
                                             MOTION DATE          07/13/2023
            - v -
                                             MOTION SEQ. NO.          002
NEW YORK CITY TRANSIT AUTHORITY, MTA BUS
COMPANY, MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY, METROPOLITAN
TRANSPORTATION AUTHORITY and CALVIN ROY       **DECISION + ORDER ON**
RADWAY,                                            **MOTION**
                         Defendants.

------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 47- 61, 63-64, 67, 73-78 and 81

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

    **ORDERED** that the motion for summary judgment by defendants New York City Transit Authority, MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority and Calvin Roy Radway is **GRANTED**, and the complaint is dismissed in its entirety, with costs and disbursements to said defendants, as taxed by the Clerk, upon submission of an appropriate bill of costs; and it is further

    **ORDERED** that the Clerk is directed to enter judgment in said defendants' favor accordingly; and it is further

    **ORDERED** that, within 60 days after entry of this decision and order, counsel for defendants is directed to retrieve the compact disc containing the video footage from IAS Part 21, 80 Centre Street Room 280 and to preserve the video footage intact pending the outcome of any appeal of this decision and order, or if no appeal is taken, until after the time to appeal from this decision and order has expired.[1]

    On this motion, defendants have submitted time-stamped video footage from multiple cameras on the bus that depict plaintiff's fall (exhibit G in support of motion [NYSCEF Doc. No. 57], placeholder for video footage). The bus video footage also provides data regarding the speed, direction, and geographic location of the bus.

---

[1] The video footage was provided on a compact disc by counsel for defendants. If the flash drive is not retrieved within 60 days after entry of this decision, court staff may discard the flash drive thereafter.

**155659/2019   CORDERO, ROSEMARIE vs. NEW YORK CITY TRANSIT**                    **Page 1 of 4**
**Motion No.  002**

1 of 4

Around the time stamp of 08:26:25 AM, camera 2 shows the bus stopped at a bus stop, as plaintiff enters the bus with a cane in her left hand and a purse on her left arm. After plaintiff pays her fare, at 08:26:38 AM plaintiff begins to walk towards the back of the bus, grabbing a handrail with her right hand, and the bus begins moving. However, after just taking a few steps forward, at 08:26:44, plaintiff—having just let go of the hand rail—suddenly appears to lose her balance, take a few steps back and fall on her back between the farebox and the door she had just entered. As plaintiff appears to begin to lose her balance, another passenger can be seen reaching out to her in an apparent attempt to prevent her from falling, but the passenger is unable to reach plaintiff and plaintiff's head appears to strike front interior wall of the bus at 08:26:48. After plaintiff's fall, the bus comes to a complete stop at 08:26:50, just before the intersection, having travelled roughly halfway down the block from the bus stop and reaching a maximum speed of 6 miles per hour and never changing lanes.

Based on this video footage, defendants have "demonstrated that the movement of the bus was not 'unusual or violent' or of a class different from 'the jerks and jolts commonly experienced in city bus travel'" (*Jimenez v New York City Tr. Auth.*, 221 AD3d 674, 675-76 [2d Dept 2023], *quoting Urquhart v New York City Tr. Auth.*, 85 NY2d 828, 830 [1995]; *see also Atterbury v Metropolitan Transp. Auth.*, 180 AD3d 433, 433-34 [1st Dept 2020] [affirming summary judgment in favor of defendants where the video footage "shows that the bus was pulling smoothly out of the bus stop and had reached a speed of 3 miles per hour, when plaintiff fell forward as he was sitting"]). Notably, the bus had moved roughly half of a block, reached a maximum speed of 6 miles per hour and never changed lanes.

In opposition to this motion, plaintiff argues that defendants have not met their prima facie burden on this motion because "[n]o expert proof from a bus safety consultant is offered" (affirmation in opposition to motion [NYSCEF Doc. No. 74] ¶ 29). However, plaintiff cites no authority for the proposition that defendants must submit "expert proof" to meet their prima facie burden that the movement of the bus was not unusual or violent, and the court is aware of no such authority. Rather, courts have routinely found that defendants have met such a prima facie burden by "by submitting, among other things, the bus camera video footage of the subject incident" (*Park v New York City Tr. Auth.*, 2024 NY Slip Op 05334 [2d Dept Oct. 30, 2024]

In addition, plaintiff argues that simply because the bus had "allegedly 'reached a speed of only 2 to 5 miles per hour', does not disprove negligence or conclusively show that no sudden and violent movement occurred. Such an accident can occur at any speed" (affirmation in opposition to motion [NYSCEF Doc. No. 74] ¶ 31, quoting affirmation in support of motion [NYSCEF Doc. No. 49] ¶ 12 [internal citation omitted]). Plaintiff further argues that there are issues of fact as to whether the bus operator may have been in a hurry—because according to plaintiff the bus driver was "[w]aving his hand so that people would get in - - hurry up and get on the bus" (plaintiff's exhibit A in opposition to motion [NYSCEF Doc. No. 75], statutory hearing transcript at 38, line 9 through 39, line 1)—and that the bus driver may have "suddenly stopped (affirmation in opposition ¶¶ 27-34, quoting statutory hearing at 40, line 10 through 18).

**155659/2019   CORDERO, ROSEMARIE vs. NEW YORK CITY TRANSIT**
**Motion No.  002**

Page 2 of 4

2 of 4

[* 2]

However, plaintiff's characterization of the happening of the accident is "contradicted by the video footage" (*Miranda v Century Waste Services*, LLC, 210 AD3d 590, 591 [1st Dept 2022]) showing that "the movement of the bus was not 'unusual or violent' or of a class different from 'the jerks and jolts commonly experienced in city bus travel'" (*Jimenez*, 221 AD3d at 675-76, *quoting Urquhart*, 85 NY2d at 830; *see also Kanuteh v New York City Tr. Auth.*, —AD3d—, 2024 NY Slip Op 05054 [1st Dept 2024] [affirming summary judgment in favor of defendants where plaintiff's testimony was "contradicted by the video evidence"]).

Likewise, plaintiff appears to argue that her medical evidence—which she contends "found a causal connection between the bus accident and the exacerbation of Plaintiff's injuries"—raises a triable issue of fact "that the bus was operated in a violent, abrupt, and negligent manner" (affirmation in opposition to motion ¶¶ 61-72, citing plaintiff's exhibit C [NYSCEF Doc. No. 77], medical report of Mike Pappas, D.O.). However, the medical evidence that plaintiff relies on offers no opinion as to the movement of the bus; and it could not do so, as the treating physician had no direct knowledge of the movement of the bus. And in any event, again, the video evidence clearly establishes that the movement of the bus was not unusual or violent.

Plaintiff also argues that she has raised a material issue of fact because plaintiff testified that after she paid her fare and the bus began to move, she asked the bus driver to allow her to take a seat before moving (affirmation in opposition to motion ¶¶ 39-43, citing defendants' exhibit K in support of motion [NYSCEF Doc. No. 61], plaintiff's deposition at 45, line 8 though 46, line 25).

However, in a case where the plaintiff bus passenger fell before she was able to sit down, the Appellate Division, Second Department affirmed summary judgment in favor of the defendant bus company holding:

> "The operator of the bus was not required to wait until the plaintiff found a seat before proceeding, and absent any claim that the operation of the bus was 'extraordinary and violent, of a different class than the jerks and jolts commonly experienced in city bus travel' (*Urquhart v. New York City Tr. Auth.*, 85 N.Y.2d 828, 830, 623 N.Y.S.2d 838, 647 N.E.2d 1346), the plaintiff failed to raise a triable issue of fact in opposition to the motion" (*McLeod v County of Westchester*, 38 AD3d 624, 625 [2d Dept 2007]).

Further, even assuming that the bus driver heard plaintiff's request to allow her to take a seat, plaintiff's own testimony was that she uttered this request after the bus operator had "started to move" (plaintiff's deposition at 45, line 8 through 46, line 25). Given that plaintiff's request was made while the bus was already in motion, and that plaintiff's fall occurred in the span of less than 10 seconds, it is purely speculative that following plaintiff's request and stopping a bus already in motion would have prevented plaintiff's fall, which allegedly resulted from a stop while the bus was in motion (*see Nova Soto-Bay v Prunty*, 115 AD3d 586, 587 [1st Dept 2014] [plaintiff's argument that

**155659/2019   CORDERO, ROSEMARIE vs. NEW YORK CITY TRANSIT**                                      **Page 3 of 4**
**Motion No.  002**

3 of 4

[* 3]

driver could have avoided collision in the few seconds preceding the accident was purely speculative]).

Therefore, defendants' motion for summary judgment is granted.

20241101200458RTSAI9F1C384E21394419ABAF9CC769052FFA

**11/1/2024**
**DATE**

**RICHARD TSAI, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155659/2019   CORDERO, ROSEMARIE vs. NEW YORK CITY TRANSIT**
**Motion No.  002**

**Page 4 of 4**

4 of 4

[* 4]